# Mary E. Whiting

## *v.*

# Frances B. Nicholl.

1. Presumption—*of death after seven years absence.* Where a person goes abroad, and has not been heard of for a long time, the presumption of the continuance of life ceases at the expiration of seven years from the period when he was last heard of.

2. The same rule holds generally with respect to persons away from their usual places of resort, and of whom no account can be given.

3. Our courts have adopted the rule, that a person is presumed to be dead who has not been heard of for seven years, leaving it incumbent on the party who claims a benefit or interest in his being alive within that period, to prove it. At what particular time a party died, is of no importance to a person claiming a right which becomes established on a death, but it may be important to one resisting that right, and so it becomes an affirmative fact, which the party alleging must prove.

4. A less period than seven years' absence will not suffice to raise the presumption of death.

5. A party whose interest it is to show that a person was living within the seven years, is at liberty to show it by such facts and circumstances as will inspire that belief in the minds of a jury.

6. Where a person had not been heard of from the 21st of March, 1852, to the 21st of March, 1859, it was held, that the presumption of law is, that he was dead on the 21st of March, 1859, being seven years from the time he was last heard of.

7. Dower—*when the right to sue for accrues.* Where a husband's death is claimed by reason of his absence for seven years without being heard of, the right of the wife to sue for dower, does not exist until the expiration of that period.

8. Same—*necessary proof to maintain an action.* To entitle a wife to recover dower, she must prove seizin in the husband, marriage and the death of the husband.

9. Same—*limitations.* An action to recover dower is embraced within the provisions of the first section of the limitation act of 1839, so that a widow must pursue her remedy, as against a party whose possession comes within the provisions of that act, within seven years, or her claim will be barred.

10. When the death of the husband is established, by the presumption of his death after seven years' absence, the limitation of the right to recover dower commences at the expiration of seven years from the time the husband was last heard of.

11. The party claiming the benefit of the limitation act of 1839, may, however, show that the death of the husband actually occurred prior to the expiration of that period.

APPEAL from the Circuit Court of Cook county ; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

This was a proceeding instituted by Frances B. Nicholl, the appellee, in the Circuit Court of Cook county, against Mary E. Whiting, the appellant, to recover dower in land owned by her, situated in that county, and a decree having been entered in favor of the appellee's right of dower, an appeal was taken by the defendant to this court.

The record presents two questions : First—whether there was sufficient legal evidence of the death of Edward A. Nicholl, the husband of the appellee ; and secondly—whether, if the fact of his death was proved, it did or not occur more than seven years before the commencement of this suit.

There was no direct positive evidence of the fact of the husband's death.

He had become involved in serious pecuniary difficulties in the city of New York, the place of his residence from the time of his marriage to the appellee, in the year 1818, and left there in December, 1842, and never returned, except once, when he stayed with his wife about one week, in the adjoining city of Brooklyn, New York.

He was frequently heard from, by letters written by him to his family and friends. The last time they heard of him, was by a letter dated March 21, 1852, addressed by him to his wife, from Pittstown, Penn.

The appellee's case was based upon the theory that the presumption of his being alive, lasted for seven years from that

date, or until March 21st, 1859, when it ceased; and was fol-
lowed by the presumption of his death from and after the last
named date, and as this suit was commenced March 14th, 1866,
that her claim for dower was not barred by the limitation of
seven years from the death of her husband. The seizin of
the husband, as well as the marriage, was not contested in this
court.

The defendant below set up the defence of the statute of
limitations, under claim and color of title, dated March 31st,
1856, and payment of all taxes assessed upon the premises
since that date, accompanied by possession, and also proved
that she paid the full consideration named in the deed to her.

The defendant below also claimed that, as the suit was not
brought until more than thirteen years from the time Nicholl
was last heard from, the appellee was bound to prove that her
husband was alive within seven years prior to the date of bring-
ing the suit, and that the mere presumption of his being alive,
drawn from the fact that he was last heard from March 21st,
1852, would not suffice to show that he was alive within seven
years next before March 14th, 1866, when the suit was com-
menced.

The appellee insisted that her husband was to be presumed
alive until March 21st, 1859, and that after that date he was
presumed to be dead; while the appellant claimed there was
no presumption that he lived until the last day of the seven
years, and that the appellee must show at what time he died,
in order to overcome the presumption of law in favor of a
party in possession of land, resisting a hostile claim.

Messrs. SCAMMON, MCCAGG & FULLER, for the appellant.

Mr. J. M. CRAM and Mr. A. W. ARRINGTON, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

. This was a petition filed by Frances B. Nicholl, in the Circuit Court of Cook county, claiming dower in an undivided one-third of certain property, known as lot two, and the east ten feet of lot three, in block thirty, in Kinzie's addition to Chicago. The demand for dower was made on Mary E. Whiting, the appellant, on the second of May, 1863. The demandant claimed dower as the widow of Edward A. Nicholl, and his title was not brought in question. The defendant set up possession of the premises under claim and color of title, derived from a deed of the same, from William B. Ogden, made in good faith, from the 31st of March, 1856, and payment of all taxes thereon, and claimed the benefit of the statute, and insisted, if Edward A. Nicholl was dead, he died more than seven years prior to the commencement of the suit. The defendant also set up a defence under the act of 1835, by showing possession of the premises by actual residence thereon under a connected title deducible of record, from the United States, for more than seven years prior to the commencement of the suit.

The cause was regularly at issue by answer and replication, and on the proofs, a decree passed in favor of Mrs. Nicholl, that she have dower in the premises, and her damages to be assessed, and costs.

To reverse this decision the defendant has appealed to this court.

The only questions of importance, are, first, was Edward A. Nicholl, the husband, dead? And second, if dead, at what time did he die?

There was no positive proof of the death of the husband.

The proof was, that he left the city of New York, where he then lived from the time of his marriage in 1818, in December, 1842, under unfavorable circumstances, and never returned, except once, when he stayed with his wife about one week in the adjacent city of Brooklyn. He was last heard from by his family and friends through a letter from him dated Pittston, Pa.,

30—46TH ILL.

March 21, 1852; although search was made for him at that place, and at all places where it was supposed he might have gone, it was fruitless. Under these circumstances, that the law raises the presumption that he was dead at the end of seven years from that date, is well settled. The general rule on this subject may be thus stated: When a person goes abroad, and has not been heard of. for a long time, the presumption of the continuation of life ceases at the expiration of seven years from the period when he was last heard of. And the same rule holds, generally, with respect to persons away from their usual places of resort, and of whom no account can be given. Best on Presumptions, 190.

The appellee's counsel insist that the husband was to be presumed to be alive until March 21, 1859, and only after that date should he be presumed to be dead; while the appellant's counsel insists there was no presumption that he lived until the last day of the seven years, and appellee must show at what time he died, in order to overcome the presumption of law in favor of a party in possession of land resisting a hostile claim.

The appellee's case rests entirely upon the theory that the presumption of Nicholl being alive, lasted for seven years from the date of his last letter, or until March 21, 1859, when it ceased, being followed by the presumption of his death from the last mentioned date, and as this suit was commenced March 14, 1866, the claim for dower was not barred by the limitation of seven years from the death of the husband.

The rule as found in Best, 191, is the English rule established in the case of *Doe ex dem. Knight* v. *Napean*, 5 Barn. & Adol. 6, and affirmed on appeal, in the Exchequer, in *Napean* v. *Doe ex dem. Knight*, 2 Meeson and Welsby, 894, but has not been adopted in this country, to the extent there laid down. Our courts have adopted the presumption of death after the lapse of seven years, leaving it incumbent on the party who claims a benefit or interest on his being alive, within that time, to

prove it.   At what particular time a party died is of no
importance, to one claiming a right which becomes established
on a death, but it may be important to one resisting that right,
and so it becomes an affirmative fact, which the party alleging
must prove.

The common law, in accordance with the civil law, adopted
the principle that the continuation of life should be presumed
until the contrary was shown.   The statutes of 1 James, 1
Ch. 11, Sect. 2, in relation to bigamy, and 19 Charles 2, Ch.
6, in relation to leases determinable on lives, innovated upon
this doctrine by the establishment of a rule, which was after-
wards adapted by way of analogy, to cases not within the
purview of these statutes.   So that it has become to be
regarded as a settled principle, that the absence of a party for
seven years without any intelligence being received of him
within that time, raises the presumption that he is dead, and
the jury, on proof of such absence, have a right to presume
his death.   A less period will not suffice to raise the presump-
tion, but a party whose interest it is to show he was living
within that time, is at liberty to show it, by such facts and cir-
cumstances as will inspire that belief in the minds of the jury.
As in this case, the demandant, to make out her right to bring
her action, had only to show her husband had not been heard
of from the 21st of March, 1852, to the 21st of March, 1859; the
presumption of law then comes in, that he was dead on the 22d
of March 1859, being seven years from the time he was last heard
of.   This is all the proof she was required to submit, the mar-
riage being established, and no question being made as to the
title of her husband.   When she, by competent proof, raised
this presumption of death, to what period of time did it
extend?   The answer is plain, her right to sue did not exist
until the death of her husband was established, and as that
was not established until the twenty first day of March 1859,
the presumption took effect on that day; then, in legal con-
templation, her husband was not among the living.

It was undoubtedly the right of appellant to rebut this presumption by showing, from facts and circumstances, that his death, in all probability, happened before that day, or on any day of any month or year between that day and the day on which he was last heard from. It was for her interest such proof should be supplied, and it was her duty to supply it. *Lloyd* v. *Deakin*, 6 E. C. L., 548; *George and wife* v. *Jasson*, 6 East, 309. The fact of death is presumed from and after a particular day, and that fact makes out the demandant's right to sue as the widow for her dower. Those contesting this right must show in some way, or raise a presumption at least, that on the day after, she was not a widow, by raising a presumption that her husband died at a time intermediate these dates, or was then living. The demandant had done all the law required of her, by raising the presumption of the death of her husband before she brought her action. To overthrow this is a duty devolving on the defendant. It was not important to the demandant that she should establish the *precise* time of her husband's death; that was no part of her case, but it was the very *gist* of the ~~demandant's~~ case, and to support it she could have urged the facts and arguments now urged by her counsel, such as the age of the husband; his health and exposure to disease; his occupation; his state of mind as to hopefulness or despondency; his regard for his family and friends, as being warm or indifferent; in short, all the circumstances which surrounded him, to raise a probability that he died soon after the date of his last letter. These considerations are presented here by the appellant's counsel, and are briefly, that he was surrounded by an affectionate family, to which he was warmly attached, at the time he left New York in 1842; that these affectionate relations continued after his departure, is shown by the correspondence kept up between him and his family, and with Demran, an intimate friend; that he and his wife met three times, apparently in a clandestine manner, after he left New

York.    And the learned counsel refers to the three last letters written by Nicholl as furnishing the probability that he died soon after March, 1852, rather than that he lived until March, 1859.    The reasons he gives in support of this view are, because no letters were received from him which were written after March 22, 1852, whereas, he had frequently written to his wife and friends until that date since his departure from New York; because he has never been seen by any of his family or friends since that date, so far as the proof shows, while before that time he had three interviews with his wife, one in Ohio, one in Pennsylvania and one in Brooklyn, then and ever since his wife's place of residence; because, when last heard from he was poor and needy, and had been so for a long time, and his wants had been in a measure supplied by small remittances of money from his wife and friends, and he knew that money and other aid were always at his disposal when required by him, and he never called for or received any further aid or money from his family; that in 1852 he was fifty-three years of age, and his letters show that his health, spirits and strength were broken and failing, and the probabilities in such cases are much greater that the man will die presently—especially one who is self-exiled under consciousness of guilt—than that he will recover strength and live seven years longer; that the presumption of the continuance of his life for seven years after March, 1852, without intercourse or correspondence with his family, is inconsistent with his previous habits in that respect, with his life-long affectionate regard for his family and friends, with his age, with his depressed bodily and mental condition, with his poverty and need of assistance, with the fact that immediate and thorough inquiry was made for him in the states to which he proposed going, without any tidings ever being received from him.

These considerations are properly suggested, perhaps, but they fall far short of raising the presumption desired by appel-

lant. His last letter received seemed to indicate that he had resolved to earn his own support by hard labor, and by a life of honest industry wipe out the stigma that had attached to his name. He does not write as a victim of despair, but rather in a hopeful tone, with some blessings of life in anticipation. There is no proof, not the slightest, of any particular cause of death being in operation at the time he was last heard from, and none that he was exposed to any particular cause of death afterward. Remorse, perhaps, was doing its work, by day and by night, the usual relief from which is self-destruction, yet it no where appears that such a suggestion or thought was ever entertained by him. It seems more probable, that, feeling most keenly his shame and his dependence on those he loved and had wronged, he formed the resolution they should hear of him no more—that he would extricate himself from their embarrassing kindness, and have no further communication with them. Moralists have said, there is no pang more keen to the sensitive mind than to be obliged to accept benefactions from those you have injured. Which is most probable, that he removed himself from all intercourse with his family, under the pressure of such feelings, continuing to live on and pine on in solitude and in shame, rather than that he died soon after his last letter, unless by his own hand, of which there is no suspicion or suggestion, and he the victim of no dangerous disease, and exposed to no particular cause of death?

His case is not like any of those to which reference has been made, but one class of these cases is where the evidence shows a cause in existence at the time the person was last heard of, which would in seven years or less naturally and probably produce his death. Such person never after being heard of, it is reasonable to suppose this cause produced its natural result.

In the case of *Sheldon* v. *Ferris*, 45 Barb., 124, cited by appellant's counsel, the death of a party who had not been heard from for eight years was presumed to have occurred

soon after the time of his disappearance, from the fact that he had frequently declared his intention to commit suicide. So in the case of *Webster* v. *Brichmore*, 13 Vesey, 362, the party was in a desperate state of health and was to have returned in six months. In the case of *Watson, adm.* v. *King*, 2 Eng., C. L., 322, the supposed deceased was exposed to heavy gales at sea, in the spring of 1814, and the vessel was never again heard of, and the court approved the finding that the missing person died before the eighth of June of the same year. In *Offen-heim* v. *Wolf et al.*, 3 Sandf., Ch., 571, the death of a person who had embarked on the steamship President, on the 11th of March, 1841, was presumed to have occurred before May in the same year, for the reason that no tidings had been received from that ship since she left port for England, and that as the usual time for steam passages across the Atlantic from New York was fourteen or fifteen days, the reasonable presumption was that she had foundered soon after leaving port and all on board perished.

The case of *Sillick* v. *Booth*, 20 Eng. Ch. 119, was a case of shipwreck, the alleged deceased being exposed in a vessel, in the hurricane season, then, as now, prevailing among the West India islands.

In all these cases, the probability of death at a particular time was so great as to amount almost to positive proof of the fact. This case is barren of any strong fact to raise any presumption sufficient to rebut that which the law raises, that a man is dead who is not heard of in seven years. The appellant, in addition to the considerations suggested of a probability that Nicholl died soon after he was last heard from, brings up the fact, that in 1858, or early in 1859, appellee made a demand of dower on William B. Ogden, which she signed with her own hand, and which was served on Ogden as the foundation of a suit against him for the recovery of dower.

That demand was dated, Brooklyn, New York, Jan. 18, 1859, and counsel insists it is evidence the demandant believed her husband dead in 1858, and she ought now to be estopped from denying it. It is apparent from the testimony, this demand originated in mistake, and no proceedings were had under it. Had there been, the rule in 2 Greenleaf Ev. Sec. 278, cited by appellant, would apply and control. Her husband was not, at that date, in contemplation of law, dead, nor was she then in a position to claim her dower.

We concede, the appellant in this case is entitled to the full benefit of every presumption in her favor, but it is no less the right of the appellee. The claim of appellee rests wholly on a presumption, but it becomes as "strong as proof from Holy Writ," when un-rebutted. To rebut it, we are not of opinion the appellant has produced any circumstance calculated to have that effect. Appellant being in possession, and protected by the act of 1839, if not by the act of 1835, is in no better position than any other person similarly situated, nor do we recognize any rule of law requiring the appellee to overcome every possible presumption which the law raises in favor of the appellant, which she has not overcome. What was the appellee to prove to entitle her to recover?—seizin of the husband, marriage and death of the husband—all which was proved or admitted, against which no possible presumption could exist, unless the court should take away from the appellee the benefit of a presumption which the law awards to her. The law says her husband did not cease to be numbered among the living until the 21st of March, 1859—from and after that day he was not alive.

This court has repeatedly held that to maintain such a defense as was set up by the appellant, an adverse possession of seven years of the premises must be shown, and the burden of proof is on the defendant, and as her possession could not have been adverse until after the death of E. A. Nicholl, it follows, the burden of proof was upon her to show when it happened,

so that thereby the adverse possession could be established. *Woodward* v. *Blanchard*, 16 Ill., 424 ; *Higgins* v. *Crosby*, 40 Ill., 260 ; *Steele* v. *Gellatly*, 41 ib. 39.

We have said the English rule laid down in *Knight* v. *Napea*, Barn. & Adol., 86, and in *Napear* v. *Knight*, 2 Mees. & Welsby, 893, that the only presumption, where a person has been absent for seven years without being heard of, is, that he is dead, but there is no presumption as to the time of his death, whether he died at the beginning or at the end of any particular period during those seven years, has not been generally adopted in this conntry. As held by the courts of this country, the doctrine is, that a person once found to be alive, is presumed to continue to live until there be proof of the contrary. At the end of seven years from the time he was last heard of, the presumption of life ceases, and the opposite presumption of death, takes its place. The legal presumption, as we understand from the decisions quoted by appellee, establishes not only the fact of death, but also the time at which the person shall first be accounted dead. This is an arbitrary presumption, but rendered necessary on grounds of public policy, in order that rights depending upon the life or death of persons long absent and unheard of, may be settled by some certain rule. *Burr* v. *Sim*, 4 Wharton, 150 ; *Bradley* v. *Bradley*, ib. 173 ; *Whiteside's* appeal, 23 Penn. 114 ; *Smith* v. *Knowlton*, 11 New Hamp. 191 ; *Newman* v. *Jenkins*, 10 Pick. 515 ; *Loring* v. *Steinman*, 1 Met. (Mass.) 211 ; *Eagle* v. *Emmet*, 4 Bradf. (Surrogate Rep.) 117 ; *Clark's ex'r* v. *Caulfield*, 2 McCarter, (N. J.) 119.

The rule, as stated in *Knight* v. *Napear*, *supra*, and which is the authority in Best, 191, is not a bad rule, and might be recognized here without any detriment to the rights of these parties. Although there be no presumption of the time of the death, whether earlier or later during the seven years, yet, if it be important to any one to establish the precise time of such person's death, he must do so by evidence of some sort, to be

laid before the jury for that purpose, beyond the mere lapse of seven years since such person was last heard of. As we have already said, it was the right of appellant, she being interested in the precise time of Nicholl's death, to have furnished the evidence thereof.

We are satisfied the presumption of death, established by appellee, was not weakened by anything proved on the part of the appellant, and that her right of action was complete before seven years expired, after the 21 March, 1859. Seven years are allowed to furnish the presumption of death. That being established, the suit for dower must be brought within seven years thereafter, as held in *Owen* v. *Peacock*, 38 Ill. 33, and *Steele* v. *Gellatly*, *supra*. The appellee was within the rule of law, and the judgment must be affirmed.

*Judgment affirmed.*