**Eugene B. Dickinson, Conservator, et al., Appellees, v. Ross R. Donovan, Administrator, Appellant.**

### Gen. No. 5404.

1.   ADMINISTRATION OF ESTATES—*power of probate courts with respect to persons presumptively dead.*   Probate courts have power to administer the estates of persons proven by eye witnesses to be dead and of persons presumptively dead.

2.   JURISDICTION—*when court of chancery not ousted.*   If a suit

be instituted in chancery to determine the ownership of a trust fund, the question to be ascertained being as to when a *cestui que trust* died, the grant of letters of administration by the Probate Court and the making of a finding as to the date of the death of such *cestui que trust* does not affect the jurisdiction of chancery in such suit.

3. PRESUMPTIONS—*as to death from absence.* Death from absence is presumed to have occurred seven years after disappearance unless the facts and circumstances establish an earlier death.

Bill for accounting. Appeal from the Circuit Court of Woodford county; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed March 16, 1911.

JOSEPH D. IROSE, for appellant; ED. E. ROBESON, of counsel.

ORMAN RIDGELY and THOMAS KENNEDY, for appellees.

MR. PRESIDING JUSTICE WILLIS delivered the opinion of the court.

Mary E. Major died testate. Her will named Jo Major, Elijah W. Dickinson and Roger B. Dickinson, executors and trustees. On November 28, 1890, letters testamentary were issued to the executors named by the County Court of Woodford county. The will provided that after certain payments were made, the property should be divided into as many equal shares as the testatrix had children living at her death, and descendants of any child or children deceased at that time; that an equal share be paid to each of the living children, and the share or shares of any deceased child or children be held in trust for the benefit of the descendants of such deceased child or children, until they reached the age of 21 years; that in case any descendant of any deceased child or children should die before that age, such share should be paid to his or her brothers and sisters. Catharine Wright, a daughter, died prior to the death of the testatrix, leaving Albert M. Wright, her husband, Will C. Wright and Guy

Wright, her only children and descendants. Albert M. Wright married again, and four children were born of such marriage. The executors distributed the estate, except the share belonging to the children of Catharine Wright, deceased, which they retained as trustees. On October 3, 1901, they paid Guy Wright his share. On August 25, 1908, he filed a bill in chancery in the Circuit Court of said county, setting up the facts above stated, and alleged that Will C. Wright died before reaching the age of 21, and averred that by reason thereof, he was entitled to Will C. Wright's share as the sole surviving descendant of Catharine Wright, and asked that the trustees be ordered to pay the same to him. The bill, among others, made Albert M. Wright and the children of the second marriage parties defendant. Afterwards Eugene B. Dickinson was appointed conservator for Guy Wright and was substituted as complainant. On December 16, 1908, Ross R. Donovan became a party defendant by leave of court. He filed a cross-bill. It alleged that he was appointed administrator of the estate of Will C. Wright by the Probate Court of Cook county; that an order was entered in that court finding that Will C. Wright died on the 16th day of April, 1900; that Albert M. Wright, his father, Guy Wright, his brother, Charles B. Wright, Fred Wright, Joseph A. Wright and Frank C. Wright, his half brothers, were the only heirs at law of Will C. Wright; that Will C. Wright became 21 years of age in 1898; and was then entitled to his share, but it was not paid to him; that he, as administrator, was entitled to the share of Will C. Wright, and asked that the trustees be ordered to pay it to him. Issues were joined on the bill and cross-bill. On the hearing the court found that Will C. Wright was born on or about November 25, 1877; that he died shortly after April 15, 1893, prior to the time he became 21 years of age; that Guy Wright was the only surviving brother of Will C. Wright descended from Mary E. Major, and that he had no sisters; that

the administrator of the estate of Will C. Wright, had no rights or equities in the subject-matter of the suit; and the court dismissed his cross-bill for want of equity, and ordered the trustees to file an account of the trust estate and pay the amount thereof to the conservator of Guy. Wright on his giving them a bond to indemnify them in case Will C. Wright should return; and Ross R. Donovan prosecutes this appeal.

It is contended by appellant that probate courts have exclusive original jurisdiction, and when the Probate Court of Cook county assumed jurisdiction of the estate of Will C. Wright and appointed an administrator, its judgment was conclusive and cannot be questioned in this proceeding. The conservator and trustees reply that as the bill was filed before the Probate Court of Cook county took jurisdiction of the subject-matter, the Circuit Court of Woodford county had exclusive jurisdiction of the trust fund, and the Probate Court was therefore without jurisdiction; that the law does not confer jurisdiction of an estate of a person that is only presumptively dead upon probate courts, but only of the estates of persons who are actually proven by eye witnesses to be dead. We are not disposed to hold that probate courts cannot administer upon the estate of one presumptively dead. Of course such administration would be void if he afterwards appears. And it is equally true that if administration is taken on the evidence of witnesses that they saw the party claimed to be dead buried, nevertheless if either the witnesses were mistaken in their identification of the party, or testify falsely to that fact, and he afterwards appeared, the administration would also be void. It is essential to the management of property and the payment of debts and the conduct of the business of life that power should exist to administer the estate of one presumptively dead. If the administration in Cook county was authorized, as we hold, still it does not follow that the administrator is entitled to the trust fund. The grant

of letters of administration only authorized the administrator to receive such personal estate as was due to Will C. Wright at the time of his death, and if he had no estate at that time, the administrator would take nothing. We are also of the opinion that the commencement of this suit constituted no legal obstacle to the granting of letters of administration in Cook county, and that the granting of such letters did not disturb the jurisdiction of the Circuit Court of Woodford county, or alter in any way its right to determine whether Will C. Wright died before or after he was 21 years of age, and that such court cannot be deprived of its jurisdiction by the fact that after the bill in this case was filed, those who would inherit the fund if he died after he was 21, procured such a finding from the Probate Court of Cook county.

The material question presented by the record is: when did Will C. Wright die? The evidence shows that he was born November 25, 1877; that he disappeared from his usual place of abode in April, 1893; that diligent inquiry was made at his last place of residence, and among his relatives, and others who would probably have heard from him if living; and that he had not been heard from at the time of the trial. The rule is that the absence of a person for seven years from his usual place of abode or resort and of whom no account can be given, and from whom no intelligence has been received within that time, raises the presumption that he is dead. Whiting v. Nicholl, 46 Ill. 230; Johnson v. Johnson, 114 Ill. 611; Reedy v. Millizen, 155 Ill. 636; Hitz v. Ahlgren, 170 Ill. 60. Applying this rule to the facts above stated, Will C. Wright died in April, 1900, more than a year after he reached the age of 21, unless all the facts and circumstances in evidence give rise to the contrary presumption. Johnson v. Johnson, *supra;* Reedy v. Millizen, *supra;* Policemen's Benevolent Association v. Ryce, 213 Ill. 9.

The evidence showed that Will C. Wright was liv-

ing at his father's home in Chicago at the time of his disappearance; that he had always lived at home; that he had a happy disposition and was on friendly terms with the family; that he was not in trouble of any kind; that he could read and write; that he was present at the reading of Mary E. Major's will; that a copy of the same had been sent to him; that he knew that the trustees had furnished money to buy clothing and other necessities for him; that he knew the money came from Mary E. Major's estate; and there were facts and circumstances proven from which it might be inferred that he knew that when he became 21 years old, he would receive a share of the same. The proof also shows that he kept a position but a short time; that he had lost his place a day or two before his disappearance, but did not let his father or step-mother know of it; that he left home on the morning of April 15, 1893, ostensibly to go to work; that he did not return that night; that his father and step-mother made a diligent search for him, not only at the place where he worked, but also at the places he usually frequented. They published advertisements in the daily papers through the agency of a company that made a business of tracing lost persons. He has never applied for any help to the trustees of Mary E. Major's estate, and has never since been heard from. He was a mere boy who had no home except his father's. He had never independently supported or taken care of himself. His case differs from that of a grown man, self reliant and accustomed to take care of himself. His father had threatened to whip him if he lost another job. He may have run away in order to avoid a whipping. Boys running away from home at that age are likely, in a short time, to return or call for help if living. He must be presumed to have affection for his brother Guy, and also for his half brothers, and apparently did have for his father and step-mother. There is nothing to show that there was any reason why he should not return if living. It is much less

likely that a boy of his age would remain away from home a sufficient time to give rise to the presumption of death than in the case of a grown man, accustomed to take care of himself and possibly embittered by business losses or charged with crime. He knew who and where the trustees were, and if alive would naturally have applied to them for help. In view of his immature age and under all the circumstances appearing in evidence, we are of the opinion that the trial court was justified in holding that the presumption of death arising at the end of seven years was overcome by the contrary presumption that he died before that time and under the age of 21 years.

His death occurring before he reached the age of 21 years, the administrator of his estate had no interest in the share of the estate of Mary E. Major, bequeathed to the descendants of Catharine Wright, deceased, and it was not error to dismiss his cross-bill for want of equity.

The decree is affirmed.

*Affirmed.*