## Mary Anne Lichtenhan, Appellee, v. Prudential Insurance Company of America, Appellant.

### Gen. No. 19,773.

1. INSURANCE, § 191*—*duty of insured to surrender policy for paid-up endowment or cash value.* Where an insurance policy provides that if it shall lapse or become forfeited it *may be surrendered* for a nonparticipating paid-up endowment or for a cash surrender value as indicated in a table, the language creates an

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Lichtenhan v. Prudential Ins. Co., 191 Ill. App. 412.

option requiring the exercise of the privilege of the beneficiary or insured within a certain time, so that a failure to exercise the option within the limited period of time terminates the right based on such language in the policy.

2. INSURANCE, § 191*—*futility of surrender of self-executing policy.* Where a policy provided that if it should lapse or become forfeited and be not surrendered for a paid-up endowment policy, the company would write in lieu thereof, *without any action* on the part of the insured, a nonparticipating paid-up term policy for a period indicated by a table incorporated therein, *held* the language printed in italics in the policy made that provision of the policy self-executing, so that nothing was left for the insured or beneficiary to do to get the benefit thereof.

3. INSURANCE, § 191*—*effect of provision for surrender in an otherwise self-executing policy.* Where a policy provided that in case of lapse, without any action on the part of the insured, the company would write a nonparticipating paid-up term policy as indicated by an incorporated table, the language that "the paid-up term policy will be delivered on the legal surrender of this policy," does not change the effect of the preceding provision for a self-executing automatic term policy, independent of any act on the part of the insured or beneficiary, the law not requiring the doing of a useless thing.

4. DEATH, § 9*—*elements of legal presumption of.* Where a person leaves home with the expectation of returning thereto within a short time and he remains away and his absence is unexplained and unaccounted for and no intelligence is received from him and he is not heard from, and his whereabouts cannot be ascertained although diligent search and inquiry are made in the vicinity of his home and at such places as he would be likely to go and from such persons as he would be likely to meet and know, and nothing is heard from or of him, and he remains away from his family and home for a period of seven years, a presumption arises from these facts that he is dead, unless there are other facts and circumstances shown which will rebut and overcome such presumption of death.

5. DEATH, § 9*—*sufficiency of evidence to raise legal presumption of.* In an action on an insurance policy, based on the legal presumption of death after the expiration of seven years from the time of the disappearance of the insured, evidence *held* to warrant the jury in arriving at the conclusion that he was dead.

6. DEATH, § 3*—*sufficiency of evidence to show diligent search.* In an action on a policy of insurance, inquiries made under the facts are *held* sufficient for the jury to hold that a diligent search

---

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number.

had been made such as to raise a presumption of death after the expiration of seven years from the time an insured had disappeared.

7. Municipal Court of Chicago, § 17*—*effect of reading instructions from memoranda.* Where the instructions to the jury in the Municipal Court consisted of one connected oral charge, the fact that certain paragraphs were presented to the court in writing and that the court while instructing the jury may have read from the memorandum containing such paragraphs, does not make that part of the charge a written instruction, the record expressly stating and showing that the court instructed the jury orally.

8. Death, § 8*—*inadmissibility of rumor without statement of source.* It is improper to give a general rumor without stating the source of the rumor to explain the disappearance of an insured, as against the presumption of death arising after the expiration of seven years.

9. Death, § 8*—*when rumor is admissible as showing reason for disappearance of one presumed dead.* Where the record shows that whenever a witness could give the source of his information as to a rumor as affecting the reason for the disappearance of an insured, the court permitted him to state the source thereof and the character of the rumor, *held* that the jury had before them the evidence as to the rumor, especially since the fact of the rumor was made the subject-matter of part of the oral charge of the court to the jury.

Appeal from the Municipal Court of Chicago; the Hon. Edward T. Wade, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Affirmed. Opinion filed February 4, 1915. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** This is an action brought in the Municipal Court of Chicago on June 24, 1911, for the recovery of the amount due Mary Anne Lichtenhan, appellee (and hereinafter referred to as the plaintiff or beneficiary), on a policy of insurance issued by the Prudential Insurance Company of America, appellant (and hereinafter referred to as the defendant or the Company), on February 9, 1903, upon the life of George Henry Lichtenhan, husband of the plaintiff (and hereinafter referred to as the insured), in favor of plaintiff, his wife. Insured disappeared

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

on or about February 15, 1903, and has never been heard from since that date, but the plaintiff, who was the beneficiary in the policy, paid the premiums on same up to February 9, 1905. Suit was brought upon the assumption that the insured was dead, and that his death occurred at the expiration of the seventh year after his disappearance, his absence having been continuous and unexplained, and without any intelligence of his whereabouts having been received by friends, relatives or those with whom he would have been likely to communicate concerning his whereabouts.

The statement of claim and affidavit of merits filed by the respective parties, and the trial of the case, presented but two issues, viz.:

(1) That the plaintiff's evidence did not bring the case within the doctrine of the presumption of death after an absence of seven years; (2) that the insurance policy was not in force.

The case was tried before a court and jury, and the issue whether or not the policy was in force was concededly a question of law. The other issue was a question of fact to be determined by the jury under correct rulings as to the evidence and proper instructions.

The court held, as a matter of law, that the policy was in force, and referred the issue, on the presumption of death after an absence of seven years, to the jury. The jury determined that issue in favor of the plaintiff, and assessed her damages in the sum of $1,162.50; the plaintiff, however, remitted the sum of $50, and judgment was accordingly entered for $1,112.50, from which judgment this appeal has been prosecuted.

HOYNE, O'CONNOR & IRWIN, for appellant; CARL J. APPELL, of counsel.

ROSENTHAL & HAMILL, for appellee; LEO. F. WORMSER, NICHOLAS R. JONES and CARROLL CARUTHERS, of counsel.

MR. JUSTICE PAM delivered the opinion of the court.

The substance of defendant's contention on this appeal is set forth in its brief as follows:

(1) Where a policy of insurance gives the insured the right to a paid-up term policy upon surrender of the original policy, he must make a demand for such term policy and surrender the old one before he is entitled to sue or enforce the covenants of such term policy.

(2) In order to raise the presumption of death from seven years' absence, it must be shown that it is such an unexplained absence as cannot be reasonably accounted for except on the presumption of death; and it must be shown that diligent search has been made, without avail, for the missing person. We shall consider these contentions *ad seriatim*.

In arguing its first contention, defendant insists that the policy having lapsed for failure to pay the premiums, plaintiff could only have based her action upon a clause in the policy which specified that if the policy should lapse after having been in force two years, the insured should have several options, one of which was to demand from the company, *upon the legal surrender of the old* policy, a paid-up term policy extending the insurance for five years and two hundred and thirty days from the date to which the premium had been paid; and further, that neither the insured nor his beneficiary ever exercised such option or demanded a policy, or ever surrendered the original policy, during such five-year term or thereafter, and that therefore the rights of the plaintiff as beneficiary under the policy had been terminated.

In its brief and argument, defendant cited many cases on this point and quoted liberally from several of them, but at the oral argument, it relied in the main upon the case of *Blume v. Pittsburg Life & Trust Co.,* 263 Ill. 160, which case had been previously, by leave

of this court, added to the list of authorities cited in its brief. However, the terms of the policy, a construction of which was involved in that case, were entirely different from the terms of the policy in the case at bar, and this difference in the terms of the policies makes the decision in the case of *Blume v. Pittsburg Life & Trust Co., supra,* inapplicable. The policy in the case at bar contained the following provision:

"PAID-UP ENDOWMENT POLICY OR EX-TENDED INSURANCE.—If this Policy, after being in force two full years, shall lapse or become forfeited for the non-payment of any premium on the date when due, as specified on the first page hereof, or of any note given for a premium or loan made in cash on such Policy as security, or of any interest on such note or loan, it may be surrendered for a non-participating Paid-up Endowment Policy, as specified in the following table, to mature at the same time as this Policy; provided the Policy be legally surrendered to the Company within three months after the date to which premiums have been duly paid. If this Policy, having lapsed or become forfeited as above, be not surrendered for a Paid-up Endowment Policy, the Company will write in lieu of this Policy, and *without any action on the part of the insured,* a non-participating Paid-up Term Policy for the full amount insured by this Policy, such Paid-up Term Policy to be dated on the day to which premiums have been duly paid, and to continue in force for the term indicated by the following table.   *   *   * The Paid-up Term Policy will be delivered on the legal surrender of this Policy.

"OR CASH SURRENDER VALUE.—If this Policy be legally surrendered to the Company within three months from the end of the second year from its date or any year thereafter, all premiums, required by the terms of the Policy, to the end of that year have been paid in full, the Company will pay therefor the sum indicated by the following table."

The paragraph entitled "Paid-up Endowment Policy or Extended Insurance" provided that "If this policy,

after being in force two full years, shall lapse or become forfeited * * * it *may be surrendered* for a non-participating paid-up endowment policy'' (italics ours), and further, that the old policy be legally surrendered to the Company within three months after the date to which the premiums had been duly paid. And the second paragraph, headed ''Or Cash Surrender Value'' also provided that if the policy be surrendered to the Company within three months from the end of the second year from its date, the premiums having been paid in full, the Company would pay a certain sum indicated in the table, as the cash surrender value of the policy.

If a recovery had been based on the aforesaid provisions in the policy (and it is conceded that it was not), then the decision relied upon by counsel in support of its contention (*Blume v. Pittsburg Life & Trust Co., supra*) would apply. The policy construed in that case contained the words ''may be surrendered,'' and provided that it should be legally surrendered within six months, which corresponds with the provision just quoted from the policy in the case at bar, save that therein the option was to have been exercised within three months. Clearly this language created an option which gave the beneficiary or the insured a privilege, and provided further that such privilege must be exercised within a limited time; consequently the failure to exercise that option within the limited period of time terminated the right based upon such language in the policy. But the rights of the plaintiff in this case were not based upon that provision, but upon the following:

''If this policy, having lapsed or become forfeited as above, be not surrendered for a Paid-up Endowment Policy, the Company will write in lieu of this Policy, *without any action on the part of the insured,* a non-participating Paid-up Term Policy for the full amount insured by this policy, such Paid-up Term Policy to be dated on the day to which premiums have been duly

paid, and to continue in force for the term indicated by the following table.'' (The italics are in the original policy);

and it further provided the length of the term, based upon a table incorporated as a part of the policy. The printing of the words ''without any action on the part of the insured'' in italics plainly indicated that the advantage of securing a paid-up term policy after the policy had elapsed, without any action on the part of the insured, was held out as an inducement to take a policy in the form it was written. This language ''without any action on the part of the insured'' clearly made that provision of the policy self-executing, and there was nothing left for the insured or the beneficiary to do in order to obtain the benefit thereunder. In the case of *Blume v. Pittsburg Life & Trust Co., supra,* the policy contained no such provision, consequently that case is not applicable.

Defendant contends that before it can be held liable under this provision in the policy it must first have issued a paid-up term policy, and that it was not bound to issue such paid-up term policy until a legal surrender of the policy sued on in this case had been made, basing its contention upon the following language in the policy: ''The paid-up term policy will be delivered on the legal surrender of this policy.'' In our opinion, these words do not change the effect of the preceding language in the provision. The policy already provided that without any action on the part of the insured the Company would write a non-participating paid-up policy for the full amount for a certain period as governed by the table incorporated in the policy. This language clearly indicated that the provision was self-executing and automatic, and was not dependent upon any act of the insured or the beneficiary. The law does not favor the doing of any useless act, and the surrender of the policy would be clearly a formal act of no consequence and unessential. *Devine v. Federal*

*Life Ins. Co.,* 250 Ill. 203 (pp. 206, 207) ; *Rose v. Mutual Life Ins. Co. of New York,* 240 Ill. 45 (pp. 51, 52). The very beginning of this suit was a notice to the defendant that plaintiff was claiming the benefit of this provision in the policy. The fact was admitted that the policy had been in force two full years, and therefore the court properly held, under the provisions in the policy, that the plaintiff was entitled to a nonparticipating paid-up term policy for the full amount of this policy, for the term of five years and two hundred and thirty days; and the mere fact that the actual paid-up term policy itself had not been delivered in no way deprived the plaintiff of her right to bring her action, providing the plaintiff had maintained her contention that the insured must have been presumed dead because of his continued and unexplained absence for more than seven years, and that notwithstanding repeated inquiries, nothing had been heard or seen of him since his disappearance, by his friends, relatives or those with whom he would naturally have communicated.

This brings us to the second issue in the case as contended for by the defendant, viz., that in order to raise the presumption of death from seven years' absence, it must be shown that it is such an unexplained absence as cannot be reasonably accounted for except on the presumption of death; and it must be shown that diligent search has been made, without avail, for the missing person.

Counsel for both parties agree that the correct rule of law as to the presumption of death after a continued and unexplained absence for seven years is stated in the case of *Kennedy v. Modern Woodmen,* 243 Ill. 560, wherein it was said (p. 566) :

"The law is well settled in this State that where a person leaves home with the expectation of returning thereto within a short time and he remains away and his absence is unexplained and unaccounted for and no

intelligence is received from him and he is not heard from, and his whereabouts cannot be ascertained although diligent search and inquiry are made in the vicinity of his home and at such places as he would be likely to go and from such persons as he would be likely to meet and know and nothing is heard from or of him, and he remains away from his family and home for the period of seven years, a presumption arises from these facts that he is dead, unless there are other facts and circumstances shown which will rebut and overcome such presumption of death. *Whiting v. Nicholl,* 46 Ill. 230; *Johnson v. Johnson,* 114 id. 611; *Reedy v. Millizen,* 155 id. 636; *Hitz v. Ahlgren,* 170 id. 60; *Policemen's Benevolent Assn. v. Ryce,* 213 id. 9.'' This has been the law in our State since the decision by Mr. Chief Justice Breese in the case of *Whiting v. Nicholl,* 46 Ill. 230, wherein he said (p. 241):

''As held by the courts of this country, the doctrine is, that a person once found to be alive, is presumed to continue to live until there be proof of the contrary. At the end of seven years from the time he was last heard of, the presumption of life ceases, and the opposite presumption of death, takes its place. The legal presumption, as we understand from the decisions quoted by appellee, establishes not only the fact of death, but also the time at which the person shall first be accounted dead. This is an arbitrary presumption, but rendered necessary on grounds of public policy, in order that rights depending upon the life or death of persons long absent and unheard of, may be settled by some certain rule.''

And it has again been enumerated in the case of *Donovan v. Major,* 253 Ill. 179 (p. 182), which quotes approvingly the language in the case of *Whiting v. Nicholl, supra.*

Defendant contends that the evidence introduced by the plaintiff failed to set forth a state of facts which would permit the court to apply the principle of law as to the presumption of death, as set forth in the cases heretofore cited, and that the court erred in refusing

to instruct for the defendant, both at the close of the plaintiff's case and at the close of all the evidence in the case, as requested by the defendant in written instructions.

As to this contention the question arises, did the evidence present a state of facts from which the jury could say that from the time of the disappearance of the insured his absence continued for seven years unexplained, and that though diligent efforts had been made to find him, nothing had been heard of his whereabouts by those who would naturally have heard from him if he had been alive? If so, the jury would have been entitled to indulge in the presumption of death, as stated in the case of *Donovan v. Major, supra;* which presumption was subject, however, to rebuttal by facts or circumstances sufficient to overcome it, or by a conflicting presumption.

The evidence shows that at the time of his disappearance the insured was a man about thirty-nine years of age, about six feet two or three inches tall, weighing about 225 pounds,—"a man to be noticed wherever he would be seen on the street," as testified by one of the witnesses; further, that he had been married to the plaintiff for a period of nine years and resided with her continually in the neighborhood known as Hyde Park, and in the immediate vicinity of his place of residence at the time of his disappearance, viz., 5646 Jefferson avenue; that for many years he had been in the ice business on his own account, and at the time of his disappearance was the owner of a wagon and team of horses; that he was last seen by the plaintiff and members of his family at about ten o'clock on the morning of either the fourteenth or fifteenth of February, 1903; that on that morning he brought ice to his home as usual, and played with his children, and before leaving, he told his wife (plaintiff) that he would have $40 for her that night, with which to pay the rent;

that he was a man of cheerful disposition, very fond of his children, and at all times a good husband; that in addition to his own children, the insured provided for the children of the plaintiff by a former marriage, who lived with him, and that he never made any complaint as to their being in the house, but cheerfully kept up the household expenses of this large family; that at the time of his disappearance the eldest daughter of the plaintiff was married and was also living with her husband at the home; that when he was last seen he was attired in his ordinary working clothes; that plaintiff, at the time of his disappearance, made inquiry of the people in the vicinity, as to his whereabouts; that when asked on cross-examination why she did not inquire the same night, she answered, "I was too sick with my baby for to go out and make inquiries;" that neither the plaintiff nor her children nor any of the neighbors in that vicinity—of whom ten or twelve took the stand—had ever heard of or from the insured from the time of his disappearance, viz., February 14 or 15, 1903; that the insured was a member of a fraternal order known as the Knights of Pythias, and one witness (McKenzie) testified that though the lodge took it up, nothing was ever heard of the whereabouts of the insured; that at one time, the plaintiff having received the information that a man answering the description of the insured had died in a hospital in St. Paul or Minneapolis, Minnesota, she addressed a letter to the chief of police of Minneapolis, inclosing a photograph of the insured, but that she received a reply stating that the man there was not the insured; that inquiry was made of the mother of the insured, who resided in the old Lichtenhan homestead at North Germantown, New York, and also of his brothers who lived in New York City, and that replies were received stating that nothing had been heard of or from him and that they knew nothing of his whereabouts; that the plaintiff for two years after his disap-

pearance paid the premiums on the policy in question, and at the time she made the payments she informed the representative of defendant that her husband had disappeared; that on March 18, 1910, she addressed a letter to the defendant calling its attention to the fact that her husband had been absent for more than seven years, and also calling its attention to the fact that she had tried to get back what she had paid in during the first two years, but that she could not get it, having been told that the policy would carry itself for more than five years without paying any more; that to this letter a reply was received on March 24th, informing plaintiff that it was making an examination of the papers and would let her hear further; that on April 12, 1910, plaintiff received a communication from defendant, stating that in further answer to her letter of March 18th its representative would call on her, and asked that she furnish him with a photograph of the insured; that shortly thereafter a photograph was furnished the defendant; that from that period correspondence continued between plaintiff and defendant, until on December 24th she was informed that nothing could be considered by the defendant until proofs of death were submitted; that from this time on her matters in controversy were taken up by her attorneys; that considerable correspondence was had between her attorneys and the Company; that from the time of his disappearance up to and including the time of the trial below nothing had been heard as to the whereabouts of the insured. The evidence with reference to the number of children the insured and the plaintiff had at the time of his disappearance leaves one in doubt as to whether there were three children already born, or two, and another about to be born.

Tested by the admitted rule of law governing the question of the presumption of death, the state of facts presented by this testimony, in our opinion, clearly

entitled the plaintiff to the legal presumption of death, unless there were other facts and circumstances to rebut and overcome such presumption of death. Defendant contends that there were such facts and circumstances in evidence. On this contention it relies upon its evidence with reference to a certain rumor that prevailed in the community, that the insured had committed a crime against nature with a beast. It was brought out on cross-examination of some of the witnesses for the plaintiff, and on direct examination of some of the witnesses for the defendant, that they had heard that a man by the name of Redmond—the owner of the stable where the insured had kept his team of horses—had found the insured in the act of committing the alleged crime. Some of the witnesses, however, testified that they had not heard such rumor, others that it was not believed in the community. A police officer testified that, following a conversation had with Redmond on or about the time of the disappearance of the insured, he looked for the insured, but could not find him. The evidence further shows that no complaint had been filed by the said Redmond, nor was any warrant ever issued for the arrest of the insured; it further showed that Redmond, at the time of the trial, resided in Bankers, Michigan, which fact appeared from the testimony of a witness for the defendant. There was no direct positive evidence as to the commission of the alleged crime by the insured. Defendant did not see fit either to call Redmond or take his deposition, though it did take the deposition of Mary Lichtenhan, a sister of the insured, who resided in North Germantown, New York. Defendant was evidently content to rest upon the testimony as to the rumor of the commission of the crime; in fact, during the course of the trial, when objection was raised to the admission of evidence relating to this rumor, defendant promised to show that this rumor had been brought home to the insured, but the record does not disclose

any evidence tending to show that fact. Other facts relied upon by the defendant to explain the absence of the insured were: that a sister of the insured—who admitted a hostile attitude towards the plaintiff—testified that the plaintiff was of a sarcastic disposition; and also that while on a visit at the home of the insured several years prior to his disappearance she had heard from the plaintiff that the insured had disappeared once before for three or four days; and also that he had another wife living in St. Paul from whom he had not been divorced prior to his marriage to plaintiff. That such conversation ever took place was denied, however, by the plaintiff. Defendant relied further upon the fact that plaintiff had secured a decree of divorce from the insured two or three years after his disappearance.

Whether or not the aforesaid rumor, the aforesaid testimony of the sister of the insured and the fact of the divorce explained or fairly tended to explain the continued absence of the insured for seven years, was clearly a question for the jury. The jury by their verdict determined the issue presented on this question, in favor of the plaintiff, and we believe, under the evidence, that they were fully warranted in arriving at that conclusion.

Defendant further urges that the failure of the plaintiff to notify the police and insert advertisements in newspapers showed that she had not made diligent inquiry as to the whereabouts of the insured. While other persons situated as plaintiff might have followed that course, yet the failure to do so need not be regarded by the jury as conclusive evidence that she did not make diligent search; nor can we say, as a matter of law, that her failure to do so was determinative of her right to claim the legal presumption of death under the other facts and circumstances in evidence. The evidence showed that the insured disappeared suddenly; further, that there was never anything heard

in the vicinity regarding him or his whereabouts, even up to the time of the trial ten years after his disappearance; that inquiries were made. The fact that plaintiff was sick with her baby may have accounted for her failure to notify the police. No facts or circumstances in the evidence tended to show where the insured might have been or could have gone, save his last known residence in Chicago, and the home of his childhood, North Germantown, New York, where the mother of the insured still maintained the old family home. The testimony clearly showed that none of the relatives knew his whereabouts. When plaintiff heard of the death of a man in St. Paul answering the description of the insured she at once acted upon it. The insured was a man of such stature and appearance as to be easily distinguished or recognized by his many acquaintances in the vicinity where he resided, or by any of his brothers and sisters or by his family, had they ever seen or heard of him since the time of his disappearance. We are therefore of the opinion that the inquiries made under this state of facts were sufficient for the jury to hold that a diligent search had been made.

In the case of *Whiting v. Nicholl*, 46 Ill. 230, and the *Policemen's Benevolent Ass'n v. Ryce*, 213 Ill. 9, and the case of *Kennedy v. Modern Woodmen*, 243 Ill. 560, the legal presumption of death was sustained, and, in our opinion, the facts in the case at bar, measured by the facts and principles of law as laid down in the aforesaid cases, also sustain the legal presumption of death. We are therefore clearly of the opinion not only that the court would have erred to have instructed the jury to find for the defendant either at the close of the plaintiff's case or at the close of all the evidence, but further, that under the facts and circumstances in evidence in this case, the jury were fully warranted in finding the issues for the plaintiff.

There remains but the question whether or not the

court correctly instructed the jury as to the law. The instructions to the jury consisted of one connected oral charge. The record shows that they were divided into paragraphs numbered from one to fourteen. In the course of its brief, defendant makes the erroneous statement that in addition to the oral charge, the court gave the jury certain written instructions. The record shows that the subject-matter of the charge covered by paragraphs 11, 12 and 13 was presented to the court in writing, and that before reading same, defendant, by its counsel, objected thereto. The record further shows that there was no exception taken at the close of the charge. Following this in the record, we have the additional language:

"But the court overruled said objections to the foregoing instructions numbered 11, 12, 13 and 14, to which ruling of the court in overruling said objections the defendant by its attorneys duly excepted."

Opposite this paragraph in the record is written in pencil the word "out." The fact that these paragraphs were presented to the court in writing and that the court while instructing the jury may have read from the memorandum containing these paragraphs, does not make that part of his charge a written instruction. The record expressly states and shows that the court instructed the jury orally. It is a grave question whether or not defendant has duly preserved an exception under the law governing objections and exceptions to oral instructions. The record does not show that any specific objections were made, save those made before the jury were instructed as to the subject-matter contained in paragraphs 11, 12 and 13; and nowhere in the record is there a statement to the court indicating the reason why such portion of the charge was objectionable, so as to give the court an opportunity to correct same if there was any error. We believe the case of *Pecararo v. Halberg,* 246 Ill. 95, and cases therein cited, preclude defendant from urging

any error on this state of the record. However, we need not rely upon that point in order to dispose of defendant's contention that the court did not correctly instruct the jury on the law as applied to the facts in the case.

Defendant complains that the subject-matter of the oral charge as contained in paragraphs 11 and 12 peremptorily instructed the jury to start out with the presumption that the insured was dead, instead of telling them first to determine if there was proof sufficient to raise such presumption. Defendant contends that this instruction does not bring to the attention of the jury that the absence must be unexplained, and, furthermore, that it did not require them to regard a diligent search as a necessary element, before the legal presumption of death could be indulged in. We do not agree with counsel that the instruction contains that vice. That portion of the court's charge was but part of a connected oral charge to the jury. In paragraphs 6, 7, 8 and 9, the jury were expressly told that mere absence for seven years without having been seen or heard from by relatives or friends was not sufficient to raise the presumption of death, if the jury further believed the evidence showed good reason for the failure of the insured to communicate with his relatives or friends; furthermore, that if the jury believed from the evidence that the insured had, prior to the time he left Chicago in 1905, committed a criminal or disgraceful act and left for fear of apprehension and punishment or disgrace for committing such act, they might consider such circumstance as to whether or not it was sufficient to account for the failure of the insured to communicate with his relatives or friends; furthermore, that if they further believed from the evidence that there were reasons shown from the evidence why the insured would not want his family, relatives and friends to know his whereabouts, then the presumption of death from the absence of said party for seven years

or more did not exist; further, they were expressly told that where a party's absence from home for more than seven years, during which time he has not been heard of by his family, relatives or friends, is explained by facts and circumstances connected with his leaving home, or the evidence showed reasons why he left home and desired to conceal himself, then there was no presumption of death because of the said absence.

We have already held that the evidence fairly tended to show that diligent inquiry had been made, and we believe the language of the charge, in view of the evidence in the case, clearly told the jury that before the legal presumption of death arose it was necessary for the plaintiff to show that diligent search or inquiry had been made. An instruction almost in the precise language of paragraph 11 of the court's charge was approved in the case of *Policemen's Benevolent Ass'n v. Ryce,* 213 Ill. 9, under a state of facts much the same as in the case at bar. On page 15 the Court said:

"The language of the instruction is substantially the same as that which has been used by this court in a number of cases. In *Hitz v. Ahlgren,* 170 Ill. 60, we said (p. 63): 'The rule in this State is, that the absence of a person for seven years from his usual place of abode or resort, and of whom no account can be given, and from whom no intelligence has been received within that time, raises the presumption that he is dead.' To the same effect is *Reedy v. Millizen,* 155 Ill. 636; *Johnson v. Johnson,* 114 id. 611."

Defendant complains of paragraph 12 of the court's charge. This was but part of a connected charge and was proper, in view of paragraphs 6, 7 and 8. *Fuller v. New York Life Ins. Co.,* 118 C. C. A. 227, 199 Fed. 897.

Defendant also complains of a part of paragraph 10. Viewed, however, in the light of the entire paragraph and as a part of a connected charge, there was no error in the giving thereof.

Defendant further complains of paragraph 13, but we do not find any merit in such contention.

We are firmly of the opinion, after a careful consideration of the record, that the court in its one connected oral charge fairly stated to the jury the law applicable to the facts and circumstances in evidence.

Defendant also complains of rulings of the court sustaining objections to certain questions asked on cross-examination of witnesses for the plaintiff, with reference to a general rumor or talk affecting the reason for the disappearance of the insured. Evidence of this nature was held to be improper in the cases of: *Kennedy v. Modern Woodmen,* 243 Ill. 560; *Johnson v. Johnson,* 114 Ill. 611. Moreover, the record shows that whenever a witness could give the source of his information as to the rumor, the court permitted the witness to state the source thereof and the character of the rumor. The jury therefore had before them the evidence as to this rumor. This is further evident from the fact that this rumor was made the subject-matter of part of the oral charge of the court to the jury.

Finding no reversible error, the judgment of the Municipal Court will be affirmed.

*Affirmed.*