## C. H. De Bow, Appellee, v. Cleveland, Cincinnati, Chicago & St. Louis Railway Company, Appellant.*

1. JURY—*right to peremptory challenge as affecting ruling on cause challenge.* If a party still has peremptory challenges remaining when the jury is sworn, it cannot be said that there was compulsion to accept any juror because an objection to him for cause was wrongly overruled.

2. JURY—*improper questions showing insurance of automobile.* In an action for negligent destruction of an automobile, it is improper to ask questions of the jury on the voir dire for the purpose of informing them that the owner was insured.

3. RAILROADS—*limits on use of senses at crossing.* Nonuse of sight or hearing by a motor vehicle operator at a railroad crossing may be excused where the view is obstructed by intervening objects, or smoke, dust or the darkness of night, or where other and louder noises may confuse the hearing, or where the movement of trains or other moving objects in the vicinity demand attention.

4. RAILROADS—*opportunity to see danger at crossing as requiring seeing it.* If plaintiff in an action against a railroad for negligently destroying his automobile at a crossing had an unobstructed view of

---

* Received from clerk of Appellate Court, August 8, 1927.

De Bow v. Cleveland, C., C. & St. L. Ry. Co., 245 Ill. App. 158.

the crossing and had no reason not to see an approaching train, the court will disregard his testimony that he did not see it although there is no evidence to contradict him.

Appeal by defendant from the City Court of East St. Louis; the Hon. WILLIAM F. BORDERS, Judge, presiding. Heard in this court at the October term, 1923. Reversed and remanded. Opinion filed March 10, 1924.

KEEFE, BAXTER & MILLER, for appellant.

FARTHING & FARTHING, for appellee.

MR. PRESIDING JUSTICE BARRY delivered the opinion of the court.

Appellee sued to recover for the loss of his automobile alleged to have been caused by the negligence of appellant in a grade crossing collision on 18th street in Granite City. The declaration charged general negligence in the operation of the train, the violation of a city ordinance which limited the speed of trains to ten miles per hour, and a failure to ring a bell or sound a whistle as required by statute. The general issue was pleaded and appellee recovered a verdict and judgment for $1,300.

It is urged, as a ground for reversal, that the court erred in sustaining objections to three questions asked each juror on the *voir dire*. So far as the record shows, appellant still had five peremptory challenges when the jury was sworn. That being true, we would not be warranted in assuming that it was compelled to accept any juror who might not be fair and impartial. *People v. Gray,* 251 Ill. 431; *People v. Brown,* 150 Ill. App. 365. The fact that appellant did not use any of its peremptory challenges would indicate that the purpose in asking the questions was to inform the jury that appellee was insured and such an examination is improper. *Mithen v. Jeffery,* 259 Ill. 372, and cases cited.

All of the witnesses say that the speed of the train was more than ten miles per hour. There is the usual conflict as to whether the statutory signals were given. The evidence of negligence on the part of appellant was sufficient to make it a question of fact for the jury. It is seriously contended that appellee was not in the exercise of due care and caution for his own safety and that of his property just before and at the time of the collision.

The accident occurred at about one o'clock on a bright, sunshiny day. A number of tracks cross 18th street in a northeasterly and southwesterly direction. At the crossing the first track on the westerly side is the Chicago & Alton main track, which is used by that company and appellant for trains going to St. Louis. The next track to the east is appellant's main track and is used by both companies for trains leaving St. Louis. About 90 feet from the crossing a switch track called the Commonwealth Lead, connects with said C. & A. main track or the westerly track at the crossing. For some distance south of the crossing 18th street runs parallel to the tracks aforesaid and on the west side of said switch track. About 100 feet north of the office of the Commonwealth Steel Company, it turns and crosses the said main tracks almost due east and west.

On the day in question appellee drove to the office of the Steel Company, and in doing so crossed the main tracks aforesaid and others at 18th street from the east. A few minutes later he turned and started back over the same route. He had been familiar with this crossing and the surroundings for 18 years. He was 52 years old and so far as the evidence shows his sight and hearing were good. He says that as he approached the crossing from the west on his return trip another car was coming across the tracks, and as the crossing is only about 14 feet wide he stopped his car about 3 feet west of the west rail of the C. & A.

main track and about 16 feet from appellant's main track to let the other car pass before starting across.

Appellee says that while he was waiting for that auto to come over the crossing he observed his view down the track to the south was obstructed by one or more box cars that stood on the first track about a car length from the crossing, but he could not tell whether there was one car or a hundred. He says he knew he could not see down the track until he passed the box cars and for that reason he lowered his windows, looked both ways for trains and listened, but he neither saw nor heard any train. He says that after the other auto came across he started but did not look for trains after he had cleared the box cars, because he was going 15 miles an hour at the time and that just as he was upon the second track he was struck by appellant's train coming from the south.

Mr. LePartis was a witness for appellee and says the box cars were not on the first or C. & A. main track, but were on the side track west of it and which joins the said main track about 90 feet south of the crossing. He says he was coming south along appellant's main track and when about 50 feet north of the crossing he saw appellee pull over to the right to let another car pass; that he saw the train coming and thought appellee had stopped to let it go by, but that he drove onto the crossing just in time for the train to hit him. This witness says that 18th street runs almost parallel with the tracks from the office of the Steel Company, to the crossing, a distance of about 100 feet, and that the box cars and the office of said company would be between a man while driving along there and a train on appellant's track. He then says that in going from said office to the crossing appellee would have to go 45 feet before he could see appellant's main track, but from there on up to the crossing there was nothing at the time of the accident

to prevent appellee from seeing the train. The plat
and photographs in evidence show the office of the
Steel Company is west of 18th street and the tracks.
We cannot see how it could be an obstruction to ap-
pellee's view of the approaching train at any time
after he left the office.

Mr. Woods, another witness for appellee, says that
he was at the stamping works 200 or 300 feet east of
appellant's main track. On direct examination he
says that the box cars were on the track east of ap-
pellant's main track, on the stamping works' side, and
that they were two or three car lengths from the cross-
ing. He was then asked several questions by counsel
for appellee and some of his answers were to the ef-
fect that the box cars were on the side track west of
the C. & A. main track, while others indicate that he
meant that they were east of appellant's main track.
On cross-examination he says they were on the C. &
A. main track and about three or four car lengths from
the crossing. He says there were between one and
three or four cars. He does not say he was closer than
200 or 300 feet of the crossing at any time and says
that he did not see the train until it was coming to a
stop and that when it stopped two cars of the train
were south of the crossing. His testimony as to the
location of the box cars is quite conflicting.

Appellee offered no further evidence as to the lo-
cation of the box cars. Witnesses for appellant say
that there were no box cars on the C. & A. main track.
Mr. LePartis, the witness for appellee, was at the
crossing at the time of the collision and he says the
box cars were not on the C. & A. main track, but on
the side track west of it and 150 feet from the cross-
ing. There is undisputed evidence that the "D" rail
for that side track is 259 feet south of the crossing
and that if any cars were placed on that track nearer
to the crossing than 259 feet the whole plant would be
out of commission, and the tower would not throw the

switches. There is no claim that such a condition existed at the time in question. There is no claim that an engine was attached to the box cars.

Under the evidence in this record the jury was not warranted in finding that the box cars were on the C. & A. main track. The only reasonable inference to be drawn from the evidence is that if there were box cars in the vicinity they were on the side track west of the C. & A. main track and at least 259 feet south of the crossing. If they were at that point they were 25 or 30 feet west of appellant's main track, and were still farther west of the point where appellee stopped at the crossing, because the tracks bore to the northeast and 18th street crosses them almost due east and west.

We are at a loss to understand how box cars so situated, with reference to this crossing and appellant's main track, could have obscured appellee's view of the approaching train. Mr. Bruchs was driving the car that came over the crossing from the east just before appellee started across. He says he saw and heard the train and the bell ringing. That when he passed appellee he (the witness) came almost to a stop; that he saw the train at that time, and it was about 150 feet from the crossing in plain view and that there was nothing to prevent appellee from seeing it, and that appellee started across and was struck.

In *Lake Shore & M. S. R. Co. v. Hart,* 87 Ill. 529, at page 534, the court said: "This court has, time and again, decided that it was the duty of every person about to cross a railroad track, to approach cautiously, and endeavor to ascertain if there is present danger in crossing, as all persons are bound to know that such an undertaking is dangerous, and that they must take all proper precautions to avoid accidents in so doing, otherwise they could not recover for injury thereby received." The use of the senses of sight and hearing is the most obvious and practicable means of avoiding

injury in such cases, but occasions may, and often do, arise where the use of those senses would be unavailing, or where their nonuse may be excused. The view may be obstructed by intervening objects, or by smoke, dust or the darkness of the night. Other and louder noises may confuse the senses. The movement of other trains, or other moving objects in the vicinity may demand attention. All of these matters have an important bearing in determining whether a plaintiff was in the exercise of due care and caution for his own safety.

In the case at bar, appellee's excuse for not seeing the train is that there were box cars which obstructed his view. It seems entirely improbable from the record in this case that the cars were in a position to interfere with his view of the approaching train. If the cars did not obstruct his view then there was no reason why he should not have seen the train if he looked.

If a person looks he is supposed to look for the purpose of seeing, and if the object is in plain sight and he apparently looks but does not see it, it is manifest he does not do what he appears to do. The law will not tolerate the absurdity of allowing a person to testify that he looked and did not see the train when the view was unobstructed and where, if he had properly exercised his sight, he must have seen it. Such is the language of the courts in variant form in the following cases: *Chicago, P. & St. L. Ry. Co. v. De-Freitas,* 109 Ill. App. 104–106; *Chicago & A. R. Co. v. Vremeister,* 112 Ill. App. 346–351; *Chicago, R. I. & P. Ry. Co. v. Jones,* 135 Ill. App. 380–384; *Toledo, St. L. & W. R. Co. v. Gallagher,* 109 Ill. App. 67; *Kennedy v. Alton, G. & St. L. Traction Co.,* 180 Ill. App. 146–149. There may be such inherent improbability in the testimony of a witness as to authorize a court or jury to disregard it, even though there is no contradictory evidence by other witnesses. *Kuehne v. Malach,* 286

Ill. 120; *Stephens v. Hoffman*, 275 Ill. 497; *Kennedy v. Modern Woodmen of America*, 243 Ill. 560.

The main defense relied upon by appellant is contributory negligence. In view of the foregoing rules of law, and the state of the evidence, the court erred in refusing appellant's 16th and 17th refused instructions. The refusal of substantially the same instructions in *Chicago City Ry. Co. v. O'Donnell*, 208 Ill. 267, and *Fowler v. Chicago & E. I. R. Co.*, 234 Ill. 619, was held to be reversible error.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*