**W. I. Grinestaff, Appellee, v. New York Central Railroad, Appellant.***

**Gen. No. 8,264.**

---

* The above, which is the original opinion, was withdrawn. A modified opinion was filed instead and is reported at p. 589, *post.*

Opinion filed January 24, 1929.

REARICK & MEEKS, for appellant; S. C. MURRAY, of counsel.

HUTTON & CLARK, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This is an action brought by appellee to recover damages for injuries resulting from an automobile collision which occurred at a railroad crossing in Hammond, Indiana, on November 26, 1927. There were various counts in the declaration charging negligence, and the fifth count charged a wanton and wilful injury in that appellant was in the possession of and operating a line of railroad; that one of said tracks, at grade,

intersected and crossed at right angles a paved public street called Kennedy avenue which ran north and south, and from which crossing the tracks of appellant extended west for a distance of 200 feet and from thence turned and extended to the southwest for a distance of 1,500 feet, where it connected with other railroad tracks. Also, that at a place 400 feet south of said crossing, on said avenue, said highway was crossed at right angles by four other railroad tracks; that Kennedy avenue, for three years next preceding the accident, was traveled in the nighttime by an average of one hundred vehicles per hour; that at said crossing there were stationed no gates, bells or like means of warning, and that in the nighttime, and for three years preceding, to the westward from said avenue there were, at distances ranging from one-fourth mile to two miles, one thousand lights upon moving and standing engines and cars, buildings and posts, ranging in height from 9 to 15 feet from the ground, which lights were likely to deceive the traveling public using said highway and crossing, not knowing or determining whether any trains were traveling upon appellant's tracks over said crossing. And the count proceeds: that said conditions created and constituted an extrahazardous condition, well known to appellant; that on said date and in the nighttime and in the dark, appellee was traveling upon said Kennedy avenue from the south and riding in his said automobile in a northerly direction toward and at said crossing; that appellant, by its servants, then operated an engine and tender from a point 1,500 feet southwest from said crossing, running backwards with the tender in front thereof, upon and across said Kennedy avenue crossing; that upon said engine so approaching said crossing, there was on the easterly end only a small light 6 inches in diameter, not of sufficient size and intensity to be a sufficient warning of the approach of the engine and tender, which insuffi-

ciency of said small light and facts aforesaid were well known by the servants of appellant, or would have been known to them by the exercise of due care on their parts; that appellant, by its servants, from a point 500 feet westerly of said Kennedy avenue wilfully, wantonly and negligently, at a high and dangerous rate of speed of 30 miles per hour, without sufficient warning by whistle (or bell or other warning sound) from said engine, or a sufficient light from the easterly end of the tender and engine, backed and propelled said engine over said crossing, and in consequence thereof, said engine collided with said automobile and appellee was not apprised of the approach of said engine, and thereby he was injured in person and property.

The cause was presented to a jury and at the close of appellee's case and at the close of all the evidence appellant moved the court to exclude the fifth count from the consideration of the jury and for an instructed verdict upon said fifth count, which was refused, and there was a verdict in favor of appellee in the sum of $5,000. Motion for new trial was made and overruled and judgment entered upon the verdict, from which appellant has appealed.

One of the chief contentions upon this appeal is whether the proofs submitted were sufficient to establish a wanton and wilful injury. Other errors are pointed out and it is strongly contended that appellee was guilty of gross negligence in attempting to cross the tracks in advance of a moving engine, and that the verdict and judgment can only be sustained under the fifth count. We shall, therefore, give attention to the fifth count and the proofs thereunder.

Hammond is a city of sixty to seventy thousand population and the crossing in question within 150 or 175 feet from the railroad switch yards and in an open territory free from buildings and obstructions, but covered by a network of railroad tracks. The terri-

tory between the tracks of the Michigan Central and
appellant are triangular in form and all is level ground
and free from any obstructions, except about 300 feet
west and south from the crossing on appellant's tracks
there is a signal shop about 16 by 20 feet (one story)
high, and further west some small buildings. There
were some lights on tanks to the northwest of the cross-
ing and other lights to the west and northwest one-
fourth to one-half mile away. The concrete on Ken-
nedy avenue at the Michigan Central crossing was
48 feet wide and at appellant's tracks 28 feet in width
at the north side.

On the night in question appellant's freight train
from the east had stopped about eighteen car lengths
east of the crossing in question, cut off sixty cars and
gone forward over this crossing; hauled the sixty cars
into the Gibson yards, detached the engine and tender,
which then ran backwards to the northeast, over the
curve, past the signal shop, thence nearly east towards
Kennedy avenue crossing to connect with appellant's
train left standing east of the crossing. There is no
testimony in the record offered by appellee tending to
show in any respect the speed of the engine and tender
in its backward course. There is no testimony in the
record tending to show the amount of road traffic over
this highway, except that appellee had crossed at this
same place earlier in the week and in the preceding
week, and had lived at Hammond and worked upon the
roads and was then working at Hammond and driving
a team upon the roads, although his home was at
Hoopston.

The witness Linton also testified that he had been
over the road one hundred times; that it had been
paved ten or twelve years and leads from Indiana
Harbor to Ridge Road, was a main thoroughfare and
used constantly, and the witness stated: ''I can safely
say there are a thousand cars go across there in a day's

time." Only two cars were seen upon the street on the night in question and there are no proofs as to what the traffic is in the night.

That the territory was much congested by railroad tracks was shown by appellee's testimony that while he was driving from where he lived in Hammond to where he worked, he crossed seventy-five railroad tracks. He did not know whether these tracks were main line or side tracks. North of the crossing in question another railroad crossed Kennedy avenue on a viaduct 1,500 feet north of the place of accident. Between these points another railroad also crossed the avenue. Appellant had another main line of railroad entering the Gibson yards from the northeast, which went northeasterly and southwesterly about 1,500 feet to the northwest of the place of the accident. The oil tanks and lights were all to the west and north of the latter railroad. There were no oil tanks, lights or obstructions between it, Kennedy avenue, and the tracks upon which the engine and tender engaged in the accident were running. The Gibson Railroad yards extended southwesterly and westerly for about a mile and a half from a point about 200 feet west from the point of injury.

Appellee, with his Ford tudor sedan, was driving north on Kennedy avenue at 1:00 or 1:30 at night. Mary Burnett sat behind appellee on the rear seat and Matt Burnett beside her to the right. Matt Burnett and Mary Burnett had been married in Gary, Indiana, about ten miles from the place of the accident, at 8:30 the preceding evening and the party had left Gary in the car at 9 p. m. and had been riding continually since leaving Gary. They had not been out of the car and were on their way back to Gary. While going over the crossing in question, the engine and tender backed into appellee's car, demolishing it, causing the death of Ida Cobb and inflicting serious injuries

upon appellee. Appellee contends that he places reliance upon each count in the declaration and that he fully established each count. The cause went to the jury on all the counts in the declaration and there was a general verdict. If appellee, therefore, has not established the fifth count and made out a case of wilful or wanton injury, the verdict cannot stand. The injury could not have been caused wilfully or wantonly and negligently at the same time. (*Chicago City Ry. Co. v. Jordan*, 215 Ill. 390; *Walldren Express & Van Co. v. Krug*, 291 Ill. 472; 45 Corpus Juris 674.)

Appellee, Matt Burnett and Mary Burnett each testified that it was a dark, cold night; that when they approached the Michigan Central tracks, 350 feet to the south there is a large red sign in the center of the road and the car was stopped; that they drove on the right-hand side of the road and were watching all along for trains after crossing the Michigan Central tracks and proceeding north; that the lights on the Ford car were working perfectly and the car proceeded at a rate of ten to twelve miles per hour. Appellee and each of the Burnetts testified that after crossing the Michigan Central tracks each looked both east and west continually for signs of a train upon appellant's railroad. Matt Burnett testified it was so dark one could see nothing. All of them knew they were coming to railroad tracks because the lights on their automobile showed the rails plainly, one stated 150 feet away and another 75 feet away, and all could see the signboard with a light on it marked "Railroad Crossing, Danger." The car was slowed down to eight to ten miles per hour and appellee testifies that all along between the two crossings he was looking from east to west and saw nothing and just a few feet before his car came to the south rail he again looked in both directions and saw nothing. Just as his front wheels got over the rail he looked west and a big black object, like a building, loomed up and struck him. In most

particulars appellee is corroborated by the witnesses Matt Burnett and his wife, Mary. All saw the rails on the track, the danger sign and knew they were coming to a railroad and knew of the existence of the railroad as they had traveled the road before. All of them testify to the same facts with a remarkable corroboration in detail and with successive reiterations. All testify that no bell was rung or whistle blown until after the accident, and that there was no light of any kind at the rear end of the tender.

Appellee presented a witness, Russell Linton, who, accompanied by Roberta E. Gardner, at the time of the accident was driving a Studebaker car south on Kennedy avenue, and who saw the engine and tender just as Linton came under the subway, 1,500 feet north of the place of the accident. Linton testified that he saw the headlight plainly and the engine just before it backed to the crossing, when he was 1,500 feet away. He also, upon approaching the crossing, saw a railroad cross-arm with a light on it on the right-hand side of the road, similar to the one on the south side of the intersection on the east side of the road. He further testified that he did not see a small white bull's eye or blizzard light burning on the east end of the tender; and testified that when he first came under the viaduct he was conscious that an engine was moving upon the tracks from the fact that its movement was shutting off the lights. Linton had testified that no whistle was blown or bell sounded. Later he modified his testimony by identifying a written instrument he had made to the effect that if a whistle was blown or bell rung he did not hear either. Linton was 23 years of age, a student at Purdue University studying electrical engineering, and in his vacations employed by the Inland Steel Company at Gary.

Roberta E. Gardner testified she was riding with the witness Linton, sitting at his right. When they came out of the viaduct she saw the tender of the engine.

She stated she did not see the headlight of the engine and heard no whistle blow or bell ring. She did see the headlights of appellee's automobile and saw the tender of the engine come upon the highway 1,500 feet away.

The declaration charged and the testimony confirmed that on the east end of the tender, facing the highway, there was a bull's eye light and that it was burning, but it is charged that it was not of sufficient size and intensity to be a sufficient warning of the approach of the engine and tender. This substantially covers the testimony of appellee upon which the count for a wilful or wanton injury is based and upon which the court must determine whether the fifth count should have been withdrawn from the consideration of the jury.

There was the further testimony of the railroad employees, the engineer, fireman and brakeman, who testified that the light to the rear of the tender was burning, and that it could be seen on the night in question for a distance of 50 feet, and on a clear night for a distance of half a mile. This testimony further showed that the whistle was blown at a point 350 feet west from the crossing, two long and two short blasts; that the automatic bell was being rung continually as the engine approached the crossing and until the accident, when the engineer shut if off. The engineer testified that the first knowledge he had that there was an automobile anywhere near him was when the fireman stated that a car was coming fast and he shut off his engine and drifted and as they came near the crossing the fireman said, "He is going across." The engineer states that he immediately put on his brakes and about that time the crash occurred. The conductor went down to the yards with the sixty cars, but did not return to the train. He testifies that when he left the engine the light at the rear of the tender was burning. There is no testimony in the record as to the speed of

the engine and tender. It is peculiar in this case that appellee should charge in his declaration that a light was burning at the rear of the tender, but not of sufficient intensity, and then furnish testimony that there was, no light on the tender at all. In the end, even the testimony of appellee's witnesses is modified to show the presence of the light. It appears to this court impossible that Linton, when he was 1,500 feet away, could see and sense the presence of an engine and tender before it arrived at the crossing, or just as it was coming up to the avenue, and appellee could know nothing about it when the tender was not over 10 feet distant from him with a light burning at its rear. No statute or ordinance of the State of Indiana is cited or pleaded attaching any duty or obligation upon the part of appellant to further safeguard this crossing further than may be required by the statutes or laws of this State, and we may presume that Indiana, like our own State, commits the various questions of hazardous operation of railroads and protection to the public to the determination of an administration board. The declaration charges that the engine was running at the rate of thirty miles per hour. This is not proven. It is charged that one hundred vehicles per hour pass over this crossing in the nighttime. There was no proof to this effect. Only two vehicles were on this highway on the night in question during an interim of fifteen to twenty minutes. The statutes of this State would have required appellant to have blown the whistle or to have rung the bell upon approaching the crossing in question. Whether appellant was derelict in this respect or even was running its engine at too high a rate of speed would not have been sufficient, standing alone, to convict appellant of a wilful or wanton injury. (*Browne v. Siegel, Cooper & Co.*, 191 Ill. 226; *Powell v. Kempton*, 231 Ill. App. 380, 384; *Lamarre v. Cleveland, C., C. & St. L. Ry. Co.*, 217 Ill. App. 296, 305.)

But appellee complains in his declaration, ''there were stationed there no gates, watchman, bells or like means of warning to appraise any such members of such public, so traveling along said avenue,'' etc., and thereupon appellee contends that it was an extrahazardous crossing and appellant wilfully or wantonly injured appellee. That result does not follow. It may be that negligence might result from some such inactivity, but a wilful and wanton injury comprehends a different state of facts. As Mr. Justice Heard said in *Lamarre v. Cleveland, C., C. & St. L. Ry. Co., supra:*

'' 'In order that one may be held guilty of wilful or wanton conduct, it must be shown that he was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result. In order to establish wantonness it is not necessary to show an entire want of care. The violation of a statute does not constitute a wilful wrong. A wilful injury will not be inferred when the result may be reasonably attributed to negligence or inattention.' 29 Cyc. 510.''

In the case at bar there can be no question but that if appellee had been in the exercise of due care and caution for his own safety the accident would not have happened. He stopped his car at the Michigan Central crossing 350 feet to the south. He knew that it was a dark night and, if it was as dark as the witnesses contend, it was appellee's duty, when he saw the danger sign and knew he was approaching a railway crossing, to stop and listen. Many of the facts in this case are subject to the rules laid down in *De Bow v. Cleveland, C., C. & St. L. Ry. Co.,* 245 Ill. App. 158, 164:

''If a person looks he is supposed to look for the purpose of seeing, and if the object is in plain sight

and he apparently looks but does not see it, it is manifest he does not do what he appears to do. The law will not tolerate the absurdity of allowing a person to testify that he looked and did not see the train when the view was unobstructed and where, if he had properly exercised his sight, he must have seen it. Such is the language of the courts in variant form in the following cases: *Chicago, P. & St. L. Ry. Co. v. DeFreitas,* 109 Ill. App. 104, 106; *Chicago & A. R. Co. v. Vremeister,* 112 Ill. App. 346–351; *Chicago, R. I. & P. Ry. Co. v. Jones,* 135 Ill. App. 380, 384; *Toledo, St. L. & W. R. Co. v. Gallagher,* 109 Ill. App. 67; *Kennedy v. Alton, G. & St. L. Traction Co.,* 180 Ill. App. 146–149. There may be such inherent improbability in the testimony of a witness as to authorize a court or jury to disregard it, even though there is no contradictory evidence by other witnesses. *Kuehne v. Malach,* 286 Ill. 120; *Stephens v. Hoffman,* 275 Ill. 497; *Kennedy v. Modern Woodmen of America,* 243 Ill. 560."

The conditions on the night in question must be determined by the proofs submitted by appellee's witness, Linton. The case stated then is, without the proofs on the part of appellant, that appellant's employees were moving an engine and tender along a known railway toward a crossing at a very slow and moderate rate of speed. They were moving backward and in view of the public highway. They neglected to blow the whistle or ring the bell. There was a bull's eye light at the back end of the tender that could be seen for 50 feet. The engine and tender made a grinding and rumbling noise that one at the crossing could not avoid hearing if he had stopped and listened, at any time when the engine was within 50 or 100 feet away from the crossing. Appellant's employees, it may be presumed, saw appellee with his car approaching and relied and depended upon the fact that appellee would stop at the crossing as the lights and danger

signal gave him warning. It was the duty of appellee to stop at the danger signal at the crossing until he could see and know that the crossing was clear. As the court said in *Bartlett v. Wabash R. Co.*, 220 Ill. 163, 166: "Daily was not required to stop the train so soon as he saw Stampfer upon the track, but had the right to assume at that time he would act as a reasonably prudent man and leave the track to avoid being run over by the moving train, and so soon as Daily discovered Stampfer did not intend to leave the track and was in a perilous situation, he was only required to use reasonable care to avoid injuring him."

It is elementary in this State that it is the duty of one approaching a railroad crossing, a known place of danger, to use due care and caution—to stop, look and listen to see that the track is clear, and that it is not the duty of railroads to stop their trains at crossings except to avoid a known or probable accident. If darkness entirely obliterates view, the traveler on the highway should stop and listen. To contend that failure to ring a bell or blow a whistle, even under the conditions stated with no other attending circumstances, argues a wilful and wanton injury, is no more forceful than the contention that appellee's failure to stop, look and listen at the crossing argues a wilful and wanton purpose on the part of appellee to derail the train.

This case differs from *Bremer v. Lake Erie & W. R. Co.*, 318 Ill. 11, 21, in which the engineer, running a train in a heavy fog, knowingly disobeyed a plain signal of the road, upon which signal all traffic on the road had the right to rely, and wantonly precipitated a collision and caused injury. This case differs materially from *Neice v. Chicago & Alton R. Co.*, 254 Ill. 595, 603, and kindred cases, in that the crossing in question in the case at bar was not a place provided by the railroad for the use of the public in the transaction of

its business, where persons have a right to be for legitimate purposes. The crossing in question was a place provided for the mutual accommodation of appellant and those using the public highway, in which each have mutual rights and in which each was bound by mutual obligations.

In *Brown v. Illinois Terminal Co.*, 319 Ill. 326, 331, the rule is stated: "A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of the impending danger, to exercise ordinary care to prevent it, or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care. (*Lake Shore & Michigan Southern Ry. Co. v. Bodemer,* 139 Ill. 596; *Heidenreich v. Bremner,* 260 id. 439; *Illinois Central Railroad Co. v. Leiner,* 202 id. 624.)"

It will not do to say that the State should have required a watchman, gates or bells at this crossing, as under the laws of this State the administration had a right to do. That is an administrative function with which courts have nothing to do. What is the evidence or facts and circumstances proven in this case that brings appellant within the rule of having committed a wilful or wanton injury? No proofs of any kind are offered by appellee tending to show how or in what manner appellant's employees operated the engine, its speed or other directions, except witnesses testify that the whistle was not blown or the bell rung and the night was dark. Linton saw the train and appellee could have seen it and the headlight with its glare to the southwest, if he had looked and used due care and caution. All parties saw the bull's eye light at the rear of the tender, and appellee could have seen it if he had looked and used due care and caution in sufficient time

to have stopped his car and avoided the injury. The whole situation presents a case, regardless of the specific acts of negligence charged, upon which we do not pass, where appellant's employees relied and depended upon appellee stopping at the crossing for which he, evidently, slowed down the speed of his car and when they found that appellee was not going to stop at the crossing appellant's employees did everything in their power to avert the injury; they stopped the engine before it had run its length. We find no proofs in this record which warrant the court in sustaining the verdict and judgment, based upon a wilful or wanton injury. The judgment is based upon the fifth count charging a wilful and wanton injury, as well as upon the other counts. That constitutes error. The court should have withdrawn the fifth count from the consideration of the jury.

Such other errors that appellant assigns which have merit, doubtless will be corrected upon another trial. For the reasons stated, the judgment of the circuit court of Vermilion county is reversed and the cause remanded for another trial.

*Reversed and remanded.*